UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TODD W. NELSON,                                    CIVIL NO. 07-2326 (ADM/JSM)

      Plaintiff,

v.                                                 REPORT AND RECOMMENDATION

METROPOLITAN LIFE
INSURANCE COMPANY,

      Defendant.


The above matter came on before the undersigned upon plaintiff's Motion for Award of Attorney's Fees and Costs [Docket No. 46]. Stephanie A. Ball, Esq. appeared on behalf of plaintiff; William D. Hittler, Esq. appeared on behalf of defendant. This motion was decided on the written submissions of the parties.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B).

For the following reasons, the Court recommends that plaintiff's Motion for Award of Attorney's Fees and Costs [Docket No. 46] be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff Todd W. Nelson filed this action on May 17, 2007, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. The suit arises out of defendant Metropolitan Life Insurance Company's ("MetLife") denial of Nelson's claim for business travel accident ("BTA") coverage. Nelson sought a determination that he was entitled to the BTA coverage and certain remedies under ERISA.

Nelson originally sustained injuries in a vehicle collision on February 11, 2003. Affidavit of David Nelson, attached as Exhibit 4 to Affidavit of Stephanie A. Ball ("Ball Aff.") [Docket No. 29-4]. Nelson filed a claim pursuant to his BTA policy with MetLife. Nelson's claim was denied by MetLife on May 27, 2004, allegedly based on the wrong disability standard set forth in the MetLife policy. Ball Aff., ¶ 3, Ex. 1 [Docket No. 29]. On November 19, 2004, Nelson timely appealed the initial claim denial. Id. at ¶ 4. Despite the BTA's policy's requirement that MetLife respond to the appeal within 45 days, Nelson never received a decision from MetLife on his appeal prior to the commencement of this case. Consequently, Nelson filed this suit. The case proceeded through litigation.

After settlement efforts failed, on November 10, 2008, the parties filed cross-motions for summary judgment which were heard on December 18, 2008. On November 5, 2008, shortly before the filing of these motions, Nelson's counsel received a check along with a cover letter dated November 4, 2008, from MetLife's counsel. Second Affidavit of Stephanie A. Ball ("Second Ball Aff."), Ex. 4 [Docket No. 36]. This cover letter referenced a letter from MetLife dated October 30, 2008, but it was not included with the November 4 letter and check. Id., ¶ 17; Fourth Affidavit of Stephanie A. Ball ("Fourth Ball Aff."), ¶ 9. On November 6, 2008, Nelson's counsel received the October 30, 2008 letter directly from MetLife. Id. The October 30, 2008, letter stated in pertinent part:

> MetLife has approved your client's claim. Enclosed please find a check for $300,194.23, made payable to your client and your firm. The $300,194.23 is comprised of $276,873, representing the benefit amount, plus $23,321.23 in interest.
> ***

> Because this matter is in litigation, we included interest using the federal rate. Per 28 U.S.C. § 1961, we calculated compound interest, using a rate of 1.82%, from May 27, 2004, the date MetLife denied your client's claim, through November 7, 2008.

Affidavit of William D. Hittler ("Hittler Aff."), Ex. 5 (October 30, 2008 Letter) [Docket No. 51-5].

Up until the October 30, 2008 letter, MetLife had failed to make any determination on Nelson's appeal of the denial of his claim. Fifth Ball Aff., ¶ 12.

On November 5, 2009, Nelson returned the check to MetLife because he believed he was owed more than the amount tendered by MetLife. Second Ball Aff., ¶ 14, Ex. 5.

At the summary judgment hearing, the parties agreed to settle the matter. According to Nelson, the parties agreed that a certain sum would be paid to Nelson for his claim for BTA coverage and a certain sum would be paid to Nelson for prejudgment interest.[1] Fifth Ball Aff., ¶ 4. The parties agreed that they would engage in good-faith settlement negotiations with respect to the issue of attorney's fees, and reserve adjudication of the issue for later, if the matter could not be voluntarily resolved. Id.; MetLife's Opposition Memorandum, p. 6 ("Def. Mem.") [Docket No. 50]; Order [Docket No. 60] (expressly reserving plaintiff's claim for attorney's fees and costs).[2]

---

[1]    The Court has not been apprised of the amounts which MetLife agreed to pay and Nelson agreed to accept with respect to the BTA coverage and prejudgment interest.

[2]    Nelson claimed that at the time the parties settled the case that MetLife had acknowledged his right to recover attorney's fees and costs, and that the dispute was solely over the amount to be paid to him. See Fifth Ball Aff., ¶ 4. However, MetLife maintained that the issue of Nelson's claim for attorney's fees and costs was only "reserved" by Nelson. Def. Mem., p. 6. Given MetLife's opposition to any payment of attorney's fees and costs, the fact that the Court played no role in the settlement of the

Nelson now moves the Court for an award of attorney's fees in the amount of $85,065.75 and costs in the amount of $2,493.77. Nelson's Memorandum in Support of Motion ("Pl. Mem.") [Docket No. 46], Fourth Ball Aff., Exs. 1, 2 and 3 (itemized fees and costs) [Docket No. 48].

MetLife has objected to Nelson's request for an award of fees and costs on grounds that he had not met his burden for establishing that he was entitled to an award, and because he has sought fees for excessive and unexplained time, for time incurred for which there is no legal or factual support, and for time spent on summary judgment research and briefing after MetLife had transmitted a check to Nelson, allegedly resolving the principal benefit claim in the case. Def. Mem., pp. 1-2.

## II. DISCUSSION

### A. An Award of Attorney's Fees and Costs is Appropriate

ERISA provides that "[i]n any action under [ERISA] . . . by a participant . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (emphasis added). There is no presumption that a prevailing party is entitled to attorney's fees. See Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 971-72 (8th Cir. 2002). Instead, the decision to award attorney's fees in an ERISA action is within the court's discretion. See White v. Martin, 290 F.Supp.2d 986, 990 (D.Minn. 2003) (citing Hogan v. Raytheon Co., 302 F.3d 854, 857 (8th Cir. 2002)).

---

case, and no written memorialization of an agreement regarding the terms of the settlement was presented to the Court as part of Nelson's motion for fees and costs, this Court must proceed with the assumption that the parties had reached no understanding regarding Nelson's entitlement to attorney's fees and costs.

That being said, [the Eighth Circuit] has previously emphasized the role of ERISA's remedial nature in determining whether to award fees, stating:

> ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.

Starr v. Metro Systems, Inc., 461 F.3d 1036, 1040 (8th Cir. 2006) (quoting Welsh v. Burlington Northern, Inc., Employee Benefits Plan, 54 F.3d 1331, 1342 (8th Cir. 1995) (citations, internal quotations, ellipsis, and brackets omitted)).

In deciding whether to award attorney's fees in an ERISA action, the court should consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Leonard v. Southwestern Bell Corporation Disability Income Plan, 408 F.3d 528, 531-32 (8th Cir. 2005) (citing Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984)); see also Bender v. Xcel Energy, Inc., Case No. 04-3117 (ADM/FLN), 2008 WL 2042521 at *3 (D.Minn. May 12, 2008) (same). These factors are to be used as general guidelines, and are "by no means exclusive or to be mechanically applied." Martin, 299 F.3d at 972.

Nelson contended that all five <u>Westerhaus</u> factors weighed in his favor. In response, MetLife maintained that the fees sought by Nelson were excessive, and that it had not acted in bad faith by denying his claim for benefits, or for refusing his claim for interest and for amounts that did not constitute salary, incentive pay or deferred compensation.[3]

---

[3] In opposing Nelson's motion for attorney's fees and costs, MetLife never suggested that Nelson was not entitled to an award of fees and costs because he was not a prevailing party. Thus, the issue is waived and not before this Court. <u>See Berryhill v. Schiriro</u>, 137 F.3d 1073, 1075 n. 2 (8th Cir. 1998) (issue not raised or briefed generally waived). However, the Court does recognize that there is a split within the various circuits as to whether 29 U.S.C. § 1132(g)(1) requires that a party prevail in order to be eligible for a fee award. <u>See Dearborn v. Hartford Life and Accident Insurance Company</u>, 2009 WL 2342884 at *2 (N.D.Iowa July 29, 2009) (collecting cases); <u>McKay v. Reliance Standard Life Insurance Company</u>, 2009 WL 537197 at *2-5 (E.D. Tenn. March 3, 2009) (same). In fact, within this District, the court in <u>Rexam Inc. v. United Steelworkers of America, AFL-CIO-CLC</u> declined to award attorney's fees in an ERISA case based on the fact that the party requesting the fees was not a prevailing party. 2008 WL 583702 at *2 (D.Minn. Feb. 6, 2008) (J. Schiltz). In that case, the defendant class moved for an award of attorney's fees and costs under § 1132(g)(1) after the matter settled privately between the parties and the court approved the settlement. <u>Id</u>. The plaintiff opposed the motion, arguing that only a prevailing party could recover fees under ERISA and given the nature of the settlement and resulting judgment, the class could not be considered to be a prevailing party. <u>Id</u>. The district court agreed. While acknowledging that the text of ERISA did not require a party to prevail in order to be eligible for an award of fees, and that the Eighth Circuit had "declined to rule definitively on the issue," the court nevertheless concluded that the defendant class had to establish it was a prevailing party. <u>Id</u>. The district court then determined that the defendant class had not prevailed because "to 'prevail' for fee-shifting purposes, a party must be awarded some relief by a court; a voluntary change in the opposing party's conduct is not enough." <u>Id</u>. at *3 (citing <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598, 603 (2001)). The court further stated that "a party who obtains no court-ordered relief through a settlement does not prevail, even if the court approves the settlement…" <u>Id</u>. (citing <u>Christina A. ex rel. Jennifer A. v. Bloomberg</u>, 315 F.3d 990, 992-93 (8th Cir. 2003)). Following an appeal to the Eight Circuit by the defendant class, the parties settled the fee dispute with the approval of the court and the case was dismissed. <u>See Rexam</u>, Case No. 03-2998 (PJS/JJG) (Order dated June 23, 2008 granting Renewed Motion for Attorney's Fees [Docket No. 444]).

Based on the reasoning of <u>Rexam</u>, Nelson could not be considered a prevailing party because whatever the terms of the settlement were between MetLife and him, the Court did not order any relief, as required by the Supreme Court in <u>Buckhannon Board</u> and the Eighth Circuit in <u>Christina A</u>. However, based on the wording of 29 U.S.C. § 1132(g)(1) and the Eighth Circuit's statements, the Court is left to wonder whether a party seeking an award of attorney's fees and costs must establish both that he was a prevailing party and entitled to an award based on the <u>Westerhaus</u> factors.

First, the statute governing an award of fees in an ERISA case is 29 U.S.C. § 1132(g)(1), which states that "[i]n any action under this subchapter…by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action <u>to either party</u>." (emphasis added). Nowhere does this provision utilize the term "prevailing party" or require such status in order to award attorney's fees.

Second, in <u>Christina A</u>., the Eighth Circuit dealt with an action brought under the Individuals with Disabilities Education Act; the matter settled and the plaintiff class sought attorney's fees under 42 U.S.C. § 1988. <u>Id</u>. at 990-91. In denying the motion, the Eighth Circuit found that, under <u>Buckhannon</u>, a private settlement was not sufficient to confer "prevailing party" status upon the plaintiffs. <u>Id</u>. at 993. However, the court noted that § 1988(b) provides that "the court, in its discretion, may allow the <u>prevailing party</u>…a reasonable attorney's fee as part of the costs…" (emphasis added). Therefore, whether the plaintiffs in <u>Christina A</u>. were a prevailing party was a necessary prerequisite for an award of attorney's fees. <u>See</u> <u>Martin v. Arkansas Blue Cross and Blue Shield</u>, 299 F.3d 966, 971 n. 7 (8th Cir. 2002) (noting the "fundamental difference" between the fee shifting statute of 42 U.S.C. § 1988 providing for attorney fees to the "prevailing party" and that of ERISA providing fees to "either party.").

Similarly, in <u>Buckhannon</u>, the Supreme Court addressed an award of attorney's fees under the Fair Housing Amendments Act, 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act, 42 U.S.C. § 12205. Unlike § 1132(g)(1) which expressly states that a court may award attorney's fees to "either party," these statutes permit a court to award in its discretion, reasonable attorney's fee and costs only to the prevailing party.

Third, to date, neither the Supreme Court nor the Eighth Circuit have held that attorney's fees under ERISA may only be awarded to a prevailing party. To the contrary, the Eighth Circuit has made it clear on three different occasions that the question remains open. <u>See</u> <u>Antolik v. Saks, Incorporated</u>, 463 F.3d 796, 803 (8th Cir. 2006) (reversing judgment of district court in ERISA case, court stated that "it is an open issue in this circuit whether attorneys' fees may be awarded under 29 U.S.C. § 1132(g)(1) to an ERISA plan claimant who does not prevail"); <u>Leonard v. Southwestern Bell Corporation Disability Income Plan</u>, 408 F.3d 528, 532 n.3 (8th Cir. 2005) ("Courts often analyze the propriety of awarding attorney fees, in the ERISA context and in other contexts, with the aid of the concept of the "prevailing party. The district court noted that we have left open the question whether an attorney fee award under the ERISA provision can be made only to a prevailing party. That question

The parties resolved the case at or shortly after the hearing on the motions for summary judgment. Therefore, the Court does not have the benefit of a decision on the merits of Nelson's suit or even the substance of the settlement reached by the parties, against which it can address the <u>Westerhaus</u> factors. Nevertheless, based on this Court's review of the record, it concludes that Nelson is entitled to an award of attorney's fees and costs.

### 1. Degree of Culpability or Bad Faith of the Opposing Party

The first factor for consideration is the degree of culpability or bad faith of the opposing party in this matter. The Court does not find bad faith on the record before it, but does find a substantial degree of culpability by MetLife that warrants a fee award. First, the record suggests that MetLife initially denied Nelson's claim based on an incorrect disability standard. <u>See</u> Ball Aff., Ex. 1. Second, MetLife appeared to have made a claim determination without having in place any procedures or policies to address a claim under its BTA policy. <u>See</u> <u>e.g.</u> Ball Aff. Exs. 7, 26. Third,

---

remains open.") (citations omitted); <u>Geissal ex rel. Estate of Geissal v. Moore Med. Corp.</u>, 338 F.3d 926, 935 (8th Cir. 2003) ("we leave unresolved the question whether, in ERISA cases, a district court may only award attorney's fees to a prevailing party"). In fact, in <u>Antolik</u>, where the Eighth Circuit reversed the district court's finding of liability against the defendant in an ERISA case and its award of substantial attorney's fees because plaintiffs were no longer the prevailing party, the court still remanded the case back to the district court for consideration of the attorney's fees issue, stating that defendant's "deceptive behavior and flagrant disregard of its ERISA disclosure duties may make this the rare case where some modest award is appropriate." <u>Antolik</u>, 463 F.3d at 803. Additionally, in <u>Leonard</u>, the appellate court stated that "while the 'prevailing party' concept may be useful to the district court, the propriety of the court's exercise of its discretion in this context does not depend on invoking that concept." 408 F.3d at 532 n.3. Finally, the Court notes that in <u>Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan</u>, the Eighth Circuit rejected the district court's analysis of the <u>Westerhaus</u> factors and determined that plaintiff was not entitled to an award of attorney's fees, despite the fact that plaintiff had prevailed in his suit. 574 F.3d 644, 651-52 (8th Cir. 2009).

notwithstanding multiple promises to Nelson that a decision would be made in a timely manner, MetLife failed to make a determination on his appeal within the 45 days required by the policy, or within the additional 90 days permitted for an insurer if special circumstances require.  <u>See</u> Second Ball Aff., ¶¶ 11-13, 15; Fourth Ball Aff., ¶¶ 11- 13. In fact, MetLife gave Nelson no answer until almost four years after his appeal – on the eve of the filing of the cross-motions for summary judgment – at which time it finally issued a check for the principal and interest.  MetLife's actions in handling this claim certainly were inconsistent with the remedial purposes of ERISA, and its ultimate determination to pay Nelson's claim just prior to the summary judgment indicates to the Court that Nelson's claim was meritorious.   <u>See</u> <u>Reed v. Shenandoah Memorial Hospital</u>, 2002 WL 1964826 (D.Neb. Aug. 12, 2008) at *4 ("The court cannot find bad faith on this record, but nevertheless finds a degree of culpability by defendants that warrants a fee award. The evidence before the court shows that [defendants] improperly denied the claim, gave inconsistent reasons for doing so, and acted in contravention of their own policies. The defendants' reliance on technical defenses in this litigation is also troubling. Without fully deciding the merits, let it suffice to say Reed has made a strong showing that [defendants] improperly denied her claim.") (footnote omitted).  The Court finds that the first factor weighs in Nelson's favor.

### 2.    Opposing Party's Ability to Pay Attorney Fees

Nelson asserted that MetLife has the ability to pay his attorney's fees.  MetLife did not challenge this contention.  The Court finds that this factor weighs in favor of awarding attorney's fees.  <u>See</u> <u>Bender</u>, 2008 WL 2042521 at *4 (where party did not

contest their ability to pay requested attorney's fees, second <u>Westerhaus</u> factor weighed in favor of fees award).

### 3. Deterrent Effect of an Award of Fees

Nelson contended that an award of fees is necessary to deter MetLife from engaging in the type of conduct in this case – <u>i.e.</u> not having any claim policies, procedures or forms for BTA coverage, or any manner by which to evaluate such a claim, and taking more than four years to make a determination on an appeal. Pl. Mem., p. 15. The Court agrees, and finds that an award of fees will help deter MetLife from ignoring ERISA requirements in the future. <u>See</u> <u>Reed,</u> 2002 WL 1964826, at *4 ("The third factor, the deterrent effect on others, also weighs in favor of plaintiff. A fee award would deter ERISA fiduciaries from wrongful denial of claims and would further the remedial goals of the statute."); <u>see</u> <u>also</u> <u>Mogck v. Unum Life Ins. Co. of America</u>, 289 F.Supp.2d 1181, 1188-89 (S.D.Cal. 2003) (stating "Plaintiff is correct that unreasonable claims handling practices might be curbed with an award of attorneys' fees in this case," but finding "there has been no showing that Defendant's claims handling was unreasonable").

### 4. Whether the Party Seeking Fees Acted in the Interest of All Plan Beneficiaries

There is no evidence in the record that Nelson acted in the interest of all plan beneficiaries. Nelson argued that while this claim was personal to him, the coverage in question was coverage afforded to other employees who could be susceptible to the same conduct by MetLife. Pl. Mem., pp. 16-17. The record before the Court contains no suggestion that others are potentially vulnerable to the treatment Nelson received merely because they have the same insurance coverage as him. The Court finds that

this factor has no effect on the fees analysis in this case.  But see Lowe v. Unum Life Ins. Co. of America, 2007 WL 4374020 at *2 (E.D.Cal. Dec. 14, 2007) ("The fourth factor similarly weighs in favor of an award of attorney's fees. While plaintiff's motivation in bringing the claim was rooted in her desire to recover her own benefits, others subject to policies or denials similar to the one at issue in this case will likely benefit.").

**5.    Relative Merits of the Parties' Positions**

This factor weighs in favor of Nelson.  As discussed above, the fact that MetLife ultimately accepted and paid his claim indicates to the Court that MetLife recognized the merits of his position in this lawsuit.  Lowe, 2007 WL 4374020 at *3 ("The final factor, the relative merits of the parties' positions, also favors a fee award because, as mentioned above, the result of the litigation-induced reassessment effectively vindicated plaintiff's rights to her disability benefits."); see also Mogck, 289 F.Supp.2d at 1189 (after observing that "there is no evidence demonstrating the merits of Plaintiff's disability claim, as the case settled before the merits were litigated", the court indicated "the relative merits of the parties' positions ... is, in the final analysis, the result obtained by the plaintiff," and … "[b]y way of settlement, [Plaintiff] received a portion of what he brought suit to recover, and so crossed the 'statutory threshold' entitling him to recover fees from the defendant. Thus, this factor weighs in favor of awarding attorneys' fees to Plaintiff.") (internal quotation marks and citations omitted).

For all of these reasons, the Court finds that an award of attorney's fees and costs to Nelson is appropriate in this case.  The Court now turns to whether the amount sought by Nelson is reasonable.

## B.    Reasonableness of Fees

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Gumbhir v. Curators of the Univ. of Missouri, 157 F.3d 1141, 1146 (8th Cir. 1998) (citations omitted); Transclean Corp. v. Bridgewood Services, Inc., 134 F. Supp.2d 1049, 1052 (D.Minn. 2001).  This approach is referred to as the lodestar method.

"Under the lodestar method, the Court determines 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Young v. Diversified Consultants, Inc., 554 F.Supp.2d 954, 956 (D.Minn. 2008) (J. Davis) (quoting Hensley, 461 U.S. at 433).  A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.  Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001); McDonald v. Armentrout, 860 F.2d 1456, 1458-59 (8th Cir. 1988) ("Requested rates should be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984).  The fee applicant bears the burden to produce evidence to support the rates charged and hours worked.  Hensley, 461 U.S. at 433.

Once a lodestar amount is determined, the court then considers the relevant factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), to increase or decrease the lodestar figure if appropriate.  Gopher Oil Co., Inc. v. Union Oil Co. of California, 757 F. Supp. 998, 1009 (D.Minn. 1991) (citation omitted).

These factors include:

> (1) the time and labor required;  (2) the novelty and difficulty
> of the questions; (3) the skill requisite to perform the legal
> service properly; (4) the preclusion of employment by the
> attorney due to acceptance of the case; (5) the customary
> fee; (6) whether the fee is fixed or contingent; (7) time
> limitations imposed by client or the circumstances; (8) the
> amount involved and the results obtained; 9) the
> experience, reputation, and the ability of the attorneys;
> (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and
> (12) awards in similar cases.

Id. at 1011 n. 16 (citing Johnson, 488 F.2d at 717-19).   Even though the Johnson

factors may be used to raise or lower the lodestar amount, "many of these factors

usually are subsumed within the initial calculation of hours reasonably expended at a

reasonable hourly rate."   Id. In short, "[a]ssessing the reasonableness of a fee requires

[the Court] to consider the plaintiff's overall success; the necessity and usefulness of the

plaintiff's activity in the particular matter for which fees are requested; and the efficiency

with which the plaintiff's attorneys conducted that activity."   Jenkins v. Missouri,

127 F.3d 709, 718 (8th Cir. 1997); see also Hensley, 461 U.S. at 433-34 (finding that

hours may be reduced by the court where documentation of the hours is inadequate, if

the case was overstaffed, or if the "hours are excessive, redundant or otherwise

unnecessary.").

### 1.    Reasonable Hourly Rate

The standard hourly rate for Stephanie Ball, Nelson's counsel, was $190 in 2005,

$195 in 2006, $210 in 2007, $225 in 2008 and $230 in 2009.   Fourth Ball Aff., ¶ 16.

Mary C. Brill, a paralegal with Nelson's counsel, billed a rate of $100 in 2005, $105 in

2006, and $110 in 2007 and 2008.   Id. at ¶ 18.   Based on this Court's knowledge of and

experience with the prevailing rates in this market, these rates are comparable to the rates of other attorneys in this community with similar knowledge and practice experience. See Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005) ("when fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates"). Further, MetLife has not contested these hourly rates. Accordingly, the Court finds the hourly rates charged by Ball and Brill to be reasonable.

### 2.    Reasonably Expended Hours

Next, the Court examines the number of hours expended by Nelson's counsel to determine if they are reasonable in light of the outcome, the necessity and usefulness of the services provided, and the efficiency with which she conducted that activity in light of her expertise. In performing this calculation, the Court must exclude "excessive, redundant, or otherwise unnecessary" hours. Hensley, 461 U.S. at 434.

Nelson's counsel has filed an affidavit in support of the request for attorney's fees and costs, seeking an award of $85,065.75 in fees. Fourth Ball Aff. [Docket No. 48]. In opposition, MetLife contended that Nelson's fee request should be reduced based on unexplained and excessive time entries, and the filing of a largely unnecessary summary judgment motion. Def. Mem., pp. 6-12. Specifically, MetLife objected to expenditure of time in several areas.

First, MetLife argued that the 43.1 hours for preparation of the Complaint in this case was excessive, given the simplicity of the case. Def. Mem., p. 7. In response, Nelson stated that the work involved in preparing the Complaint included: preparation of the complaint, legal research, review of medical records; communications between Nelson, his employer and MetLife concerning BTA coverage; correspondence between

Nelson's counsel and MetLife concerning the claim, claim denial and appeal; review of the denial and supporting documentation relied upon by MetLife; consideration of the appeal and supporting documentation; and review and analysis of the certificate of insurance affording BTA coverage. Pl.'s Reply, p. 16.

Second, MetLife objected to the 75 hours for research regarding business travel insurance, ERISA's standard of review and remedies, attorney's fees, prejudgment interest and summary judgment. Def. Mem., p. 8. Nelson responded that all of this research was necessary to determine the claims and remedies Nelson could assert, and to determine whether any of the affirmative defenses asserted by MetLife were valid. Pl.'s Reply, p. 17. Nelson also pointed out that although the time spent for research totaled 75 hours, that research took place over a year-and-a-half of litigation. Id., p. 18.

Third, MetLife challenged the 94.75 hours spent by Nelson's counsel on the issue of summary judgment. Def. Mem., p. 9. MetLife contended that there was absolutely no reason for Nelson to file for summary judgment when MetLife had already sent Nelson a check in the amount of $300,194.23. Id. In reply, Nelson stated that he did not receive the claim determination letter until November 6, 2008, which was only one day before he was obligated to serve and file the summary judgment pleadings; accordingly, substantial time and effort had already been expended by Nelson in the preparation of his summary judgment pleadings. Pl.'s Reply, p. 19. Further, because he disagreed with the amount of the check sent to him, Nelson was obligated to proceed with his motion and respond to MetLife's motion for summary judgment. Id., pp. 19-20.

Fourth, MetLife took issue with the 40 hours Nelson' counsel spent preparing standard form documents associated with Rule 26 disclosures and to attend a short conference. Def. Mem., p. 9. Nelson responded that many documents were involved in the case, and preparation of the Rule 26 disclosures required cataloguing and preparing an inventory of the documents to make the appropriate disclosures. Pl.'s Reply, p. 21.

Finally, MetLife disputed Nelson's claim of 45 hours for preparation and attendance at a settlement conference that lasted one day. Def. Mem., p. 10. In reply, Nelson stated that the preparation for the settlement conference included research, meeting with clients and reviewing voluminous documents, and preparing a detailed submission required by the Court. Pl.'s Reply, p. 21. Furthermore, because the settlement conference was rescheduled, Nelson stated that the hours reflected the fact that counsel had to prepare twice for the settlement conference. Id.

Before addressing the specifics of Nelson's request for attorney's fees and MetLife's objections, there are certain miscellaneous entries that the Court has rejected or reduced for a variety of reasons. They are as follows:

> May 10, 2007 – .3 hours ($67.50). The Court rejects this entry because no explanation was provided as to provider Joseph Mihalek or his role on this case.

> October 29, 2007 – 2.00 hours ($420). The Court rejects this entry because the description ("tasks necessary to advance claim") is too vague and insufficiently detailed for the Court to determine if the time expended was reasonably necessary, redundant, or excessive. See Bores v. Domino's Pizza LLC, Civ. No. 05-2498 (RHK/JSM), 2008 WL 4755834 at *6 (D.Minn. Oct. 27, 2008) (citing Miller v. Woodharbor Molding & Millworks, Inc., 174 F.3d 948, 950 (8th Cir. 1999)).

> February 14, 2008 – 12 hours ($2,750). This Court's Notice of Pretrial Conference did not require Nelson's counsel to appear in person for the conference with MetLife Counsel. See Docket No. 9 ("Pursuant to Federal Rule of Civil Procedure 26(f), trial counsel for each party shall confer in

person or by telephone on or before February 4, 2008 to discuss (a) settlement, and (b) to prepare the report required by Rule 26(f) and Local Rule 16.2.") (emphasis added).  Accordingly, the Court will not award fees for time expended traveling to and from the initial conference with MetLife counsel.  This entry is reduced by 6 hours ($1375).

February 25, 2008 – 10 hours ($2250).  The pretrial conference with the Court lasted 15 minutes [Docket No. 11], and counsel could have attended by phone.[4]  The Court will not award fees for time expended traveling to and from the initial conference with MetLife counsel.  This entry is reduced by 6 hours ($1375).

March 4 and 5, 2008 – 4.00 hours ($900).  These services (preparation of log of administrative record) could easily have been performed by a paralegal.  See Mogck v. Unum Life Ins. Co. of America, 289 F.Supp.2d 1181, 1193 (S.D.Cal.,2003) ("'[W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable.'") (quoting New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co., Inc., 72 F.3d 830, 835 (10th Cir. 1996)).  Thus, the Court will only permit an award of fees for these hours at the rate charged by the legal assistant, Brill, in the amount of $110 per hour and reduces these entries by $460.

May 22, 2008 – 2 hours ($450).  The Court rejects this entry because the description ("tasks related to mediation of BTA claim, including conference with defense counsel") is too vague and insufficiently detailed for the Court to evaluate if the time expended was reasonably necessary, redundant, or excessive.

September 24, 2008 – 9 hours ($2025).  Included within this entry is the time expended by counsel for travel from Duluth to the St. Paul.  This Court will not award time for travel; the entry is reduced by 3 hours ($675).

September 25, 2008 – 10 hours ($2250).  The settlement conference with the Court lasted approximately 4 hours.  See Docket No. 17.  The Court presumes that included within this entry is the time for travel from St. Paul to Duluth.  This Court will not award time for travel; the entry is reduced by 3 hours ($675).

---

[4]     While the entry for February 25, 2008 does not state that Nelson's counsel was billing for travel time, based on the number of hours billed (10 hours), and the request for reimbursement for mileage, parking and meals, the Court presumes that the entry must include travel time.  See Ball Aff., Ex. 2.  Also, it is inconceivable that counsel spent 9.75 hours preparing for a 15-minute conference.

October 2, 2008 – 2 hours ($450). This entry states "Reacted. Attorney-client privileged." This Court will not award fees for services it cannot evaluate. <u>Bores</u>, 2008 WL 4755834 at *6 ("Courts routinely reduce fee requests where redactions leave it impossible to discern the appropriateness of counsel's work.") (citations omitted). It is rejected.

October 8, 2008 – 2 hours ($450). The Court rejects this entry because the first part of the description ("Consider additional means of advancing resolution of claim") is too vague and insufficiently detailed for the Court to evaluate if the time expended was reasonably necessary, redundant, or excessive. The remainder of the description ("conference with Gertie, Judge Montgomery's clerk, regarding scheduling of motion hearing") constitute services that are clerical or ministerial in nature, and could have been performed by a secretary. <u>See</u> <u>Shrader v. OMC Aluminum Boat Group, Inc.</u>, 128 F.3d 1218, 1222 (8th Cir. 1997).

October 15, 2008 – 2 hours ($450). The Court rejects the first part of this entry because the description ("Consider means of advancing resolution of claim") is too vague and insufficiently detailed for the Court to evaluate if the time expended was reasonably necessary, redundant, or excessive. The Court will reduce this entry by 50% ($225).

December 18, 2008 – 8 hours ($1800). This Court will not award time for travel to and from Duluth to Minneapolis; the entry is reduced by 6 hours ($1350).

December 19, 2008 – 3 hours ($675). The Court rejects those portions of the entry that are too vague and insufficiently detailed for the Court to evaluate if the time expended was reasonably necessary, redundant, or excessive ("Continue to advance settlement negotiations;" "consider ways of continuing to advance remaining elements of claim."). The Court will reduce this entry by 50% ($337.50).

Based on these miscellaneous entries, Nelson's request for attorney's fees is reduced by $8310.

The Court now examines the reduced fee application in the amount of $76,755.75 against the following backdrop: Apart from the disclosures made by the parties pursuant to Rule 26(a)(1), a review of the time records submitted by Nelson's counsel reveals that no discovery was conducted in this case, no non-dispositive motions were brought and no trial occurred. Further, for the most part, the issues

presented by this ERISA dispute were neither complex nor novel. They involved standard issues surrounding the standard of review to be applied, contract interpretation, and remedies afforded by ERISA. Thus, even with the reduction of the application for fees to $76,755.75, the question is whether all of the services performed by Nelson's counsel were necessary and reasonable where the resolution of the case was based solely on the administrative record and the cross-motions for summary judgment brought by the parties. This Court concludes that while much of Nelson's attorney's time was appropriate, some of it was not. In particular, the Court finds that, whether due to redundancy in services, "overlawyering" or performance of tasks not supported by the law, the amount of time expended by Nelson's counsel in connection with the research performed throughout the pendency of this case (98.25 hours); meeting and preparation of the parties' joint Rule 26(f) report, attendance at the pretrial conference, and preparation of the Rule 26(a)(1) disclosures (26 hours); preparation for and attendance at a 4-hour settlement conference with the Court (31 hours); and pursuing and responding to the summary judgment motions (85 hours) was excessive, and should be reduced.

a.     Research

According to counsel's affidavit, Nelson's attorney spent a total of 98.25 hours ($22,121.25 in fees) on research for this case. See Fourth Ball Aff., Exs. 1, 3 (entries 4/24/07, 5/11/07, 8/17/07, 8/21/07, 8/24/07, 9/09/07, 9/12/07, 9/17/07, 9/22/07, 9/27/07, 9/28/07, 10/2/07, 11/29/07, 12/12/07, 9/15/08, 9/16/08, 9/20/08, 9/26/08, 9/27/08, 10/06/08, 10/21/08, 10/22/08, 10/26/08, 11/30/08, and 12/07/08, 5/13/09). Based on

counsel's descriptions, this research can generally[5] be broken down as follows: 20.25 hours spent researching business travel accident insurance (4/24/07, 5/11/07, 8/17/07 and 9/17/07); 21 hours spent researching ERISA remedies, penalties and standards of review (8/21/07, 9/9/07, 9/12/07, 9/17/07, 9/22/07, 10/02/07 and 9/20/08); 15 hours spent researching attorney's fees (9/27/07, 9/15/08, 9/16/08, 9/26/08, 5/13/09); 26.125 hours spent researching prejudgment interest, deferred compensation and adjusted compensation (11/29/07, 12/12/07, 9/27/08, 10/06/08, 10/21/08, 10/22/08 and 11/30/08); 11 hours of research associated with the motions for summary judgment (10/26/08 and 12/7/08); and 4.875 hours on miscellaneous research topics (8/24/07 and 9/28/07).

This Court does not doubt that counsel devoted more than twelve 8-hour days over the course of this case on research. Nevertheless, this Court finds that this is simply too much time when the substance of the business travel insurance was never an issue, presumably Nelson's counsel was well-versed in ERISA and its remedies (including awards for attorney's fees), penalties and standards of review, the same topics were researched on multiple occasions suggesting redundancy or lack of efficiency in effort, and counsel spent substantial amount of time on the topic of prejudgment interest to advance a position that was not supported by Eighth Circuit

---

[5] Several entries on Exhibit 1 contain references to research-related activities and other services performed on the same day. See Ball Aff., Ex. 1 (entries for 8/24/07, 9/9/07, 9/12/07, 9/28/07, 10/02/07, 11/29/07, 12/12/07, 10/21/08, 10/22/08, 11/30/08, and 12/7/08). As there was no way to determine what portion of the hours entered were associated with research, as opposed to the other activities described in the entry, the Court assumed that 50% of the time was associated with research and 50% of the time was associated with the other activities described in the entry.

law.[6]    Therefore, the Court finds that a reduction by 50 hours ($11,250) or

approximately half of the time associated with research is appropriate.

---

[6]    Nelson's summary judgment motion requested "an award of pre-judgment interest at the prime rate of interest in effect for each year in which the benefit was withheld, compounded annually or alternatively, interest at the state judgment interest rate, compounded annually, for each of the years in which the benefit was withheld." Nelson's Summary Judgment Motion, p. 37 [Docket No. 28].  While Nelson's argument for a higher rate for prejudgment interest was both creative and found support outside of the Eighth Circuit, it was contrary to the holdings within our Circuit.  Prejudgment interest awards "'are permitted under ERISA where necessary to afford the plaintiff other appropriate equitable relief under section 1132(a)(3)(B).'" Christianson's v. Poly-America, Inc. Medical Benefits Plan, 412 F.3d 935, 941 (8th Cir. 2005) (quoting Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 945 (8th Cir. 1999)).  However, the Eighth Circuit has expressly held that "the interest rate is not set by state law; rather, it is determined in accordance with 28 U.S.C. § 1961."  Gordon v. Northwest Airlines, Inc. Long-Term Disability Income Plan, 606 F.Supp.2d 1017, 1041 (D.Minn. 2009) (citing Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1331 (8th Cir. 1995)); see also Delcastillo v. Odyssey Resource Management, Inc., 292 Fed.Appx. 519, 520 (8th Cir. 2008) (noting that plaintiffs may be entitled to prejudgment interest, which should be calculated under 28 U.S.C. § 1961); Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 969 (8th Cir. 2004) ("The District Court properly found that [plaintiff] was entitled to prejudgment interest and properly relied on 28 U.S.C. § 1961 to determine the appropriate rate of interest."); Kerr, 184 F.3d at 946 (noting that "'28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest' under ERISA" (quoting Mansker, 54 F.3d at 1331)); Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pen. Fund, 2008 WL 1944887 at *1 (D.Minn. May 1, 2008), rev'd on other grounds, 574 F.3d 644 (8th Cir. 2009) (rejecting plaintiff's request for prejudgment interest using Minnesota's state-judgment interest rate, and finding that the calculation of pre-judgment interest is governed by federal law in ERISA cases based on 28 U.S.C. § 1961); Parke v. First Reliance Standard Life Ins. Co., 2003 WL 131731 at *1 (D.Minn. January 08, 2003) ("Pre- and post-judgment interest are calculated according to 28 U.S.C. § 1961."), rev'd in part, 368 F.3d 999, (8th Cir. 2004).  Section 1961 provides the interest rate is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Here, based on 28 U.S.C. § 1961, MetLife properly paid a rate of 1.82% for prejudgment.  Def. Mem., p. 10.

>        b.    Rule 26(f) Conference with MetLife, Preparation of Rule 26(f)
>               Report, Pretrial Conference, and Rule 26(a)(1) Disclosures

Nelson seeks attorney's fees associated with the meeting with MetLife counsel and preparation of the parties' joint Rule 26(f) Report (6 hours), preparation for and attendance at the pretrial conference with the Court (4 hours), and preparation of the Rule 26 disclosures (16 hours).[7]  Fourth Ball Aff., Ex. 1 (entries dated 2/14/08, 2/22/08, 2/25/08, 3/4/08, 3/5/08, 3/6/08, 3/7/08).  The pretrial conference with the Court lasted 15 minutes.  [Docket No. 11].  Assuming that Nelson's counsel spent some time preparing for the conference, 3.75 hours for preparation for the conference is excessive. Further, the Court finds that 16 hours for the preparation of the Rule 26 disclosures to be unwarranted and to require a reduction in time.[8]  Therefore, the Court concludes that a reduction by 10 hours ($2250) of time associated with the pretrial conference and preparation of the Rule 26(a)(1) Disclosures is appropriate.

>        c.    Settlement Conference

A settlement conference with the Court was originally scheduled for March 31, 2008, but was rescheduled for and took place on September 25, 2008.  See Orders dated February 27, 2008 [Docket No. 12] and May 21, 2008 [Docket No. 14].  Nelson seeks an award for 31 hours of time expended by his attorney in preparation for and

---

[7]    This figure does not include the travel time reflected in the entries dated February 14 and 25, 2008 that this Court has already rejected.

[8]    In support of the time associated with the Rule 26 disclosures, Nelson argued that his disclosures included a description by category and location all documents which would be used by him to support his claim, and that the documents which supported his claim were voluminous.  Pl.'s Reply, p. 6 (citing Plaintiff's Rule 26(a)(1) Initial Disclosures dated March 7, 2008).  These disclosures are not part of the Court's docket and were not provided to the Court in support of the fee application.

attendance at the settlement conference.[9]   In response to MetLife's objection to the magnitude of these hours, Nelson explained that some of the reported hours reflected the need to prepare twice for the settlement conference.

A review of Nelson's fee submission indicates that his attorney spent 6 hours in preparation for the originally scheduled conference.  See Fourth Ball Aff., Ex. 1 (entries dated 3/21/08 and 3/22/08).  At that time, counsel submitted an eight-page confidential letter with exhibits to the Court.   Counsel subsequently spent another 12 hours preparing for the rescheduled settlement conference and the two-page confidential letter (with exhibit) to the Court.   See Fourth Ball Aff., Ex. 1 (entries dated 9/16/08, 9/17/08, 9/22/08 and 9/23/08).[10]  Additionally, on September 24, 2008, Nelson's counsel spent 6 hours meeting with the Nelsons and preparing further for the settlement conference; on September 25, 2008, Nelson's counsel reported spending 7 hours for "day long settlement conference before Magistrate Mayeron; up early for several hours to prepare for same."   According to the Court's minutes, the settlement conference on September 25, 2008 lasted 4 hours.  See Docket No. 17.

The Court cannot accept expenditure of 6 hours of preparation for the originally scheduled settlement conference, followed by another 25 hours in preparation and attendance for the rescheduled settlement conference on September 25, 2008.  These

---

[9]      This figure does not include the travel time reflected in the entries dated September 24 and 25, 2008 that this Court has already rejected.

[10]      The entry for September 16, 2008, billed 8 hours for research on attorney's fees and preparation for the settlement conference and updated letter to the Court.  This Court included only 4 hours for services associated with the settlement conference. The remaining 4 hours were included in the Court's analysis of counsel's time expended on research of attorney's fees.

hours are particularly troublesome, when the bulk of Nelson's submission in support of his position for settlement was contained in his March 2008 letter to the Court, the September submission was simply an update of the March letter, and the conference itself lasted only 4 hours.[11]  Accepting the time for the March 2008 submission to the court (6 hours), the time expended in the settlement conference (4 hours), and some time for the supplement submission to the Court and for preparation for the conference, the Court concludes that a reduction in time in the amount of 9 hours ($2025) is warranted.[12]

        d.    <u>Summary Judgment Motions</u>

According to Nelson's counsel itemization, in addition to the research performed in connection with the summary judgment motions of the parties (which has already accounted for earlier in this decision), Nelson's counsel expended an additional 44 hours preparing for his summary judgment motion.  <u>See</u> Fourth Ball Aff., Ex. 1 (entries dated 10/23/08, 10/24/08, 10/27/08, 10/28/08, 10/29/08).  Further, after service of MetLife's motion for summary judgment on November 10, 2008, Nelson's counsel

---

[11]    Without divulging the contents of the confidential submissions by the parties to the Court or the substance of the settlement conference, suffice it to say that by the time the September 2008 settlement conference took place, the issues between the parties had been narrowed substantially.

[12]    The Court also notes that Nelson's counsel reported an additional 37 hours after the settlement conference in an effort to advance settlement negotiations, including telephonic conferences with this Court (10/01/08, 10/07/08, 10/17/08), preparation for one of those conferences (10/15/08), preparation of letters to and preparation for negotiations and conferences with MetLife's counsel (9/27/08, 9/30/08, 10/22/08, 10/24/08, 10/29/08, 12/19/08) and research and consideration of additional means of advancing resolution of the claim (10/08/08, 10/15/08).  Except to the extent that the Court rejected some of these entries for a lack of an adequate description, it has awarded Nelson for all of the time expended by his attorney on settlement-related activities following the settlement conference.

expended another 40 hours preparing his response to MetLife's motion and the Reply for his motion, and appearing at the summary judgment hearing on December 18, 2008.[13]  See Id. (entries dated 11/30/08, 12/01/08, 12/02/08, 12/07/08, 12/08/08, 12/17/08, 12/18/08).  Thus, Nelson expended approximately 84 hours in connection with the parties' respective summary judgment motions.

As an initial matter, the Court rejects MetLife's suggestion that most of the time expended by Nelson's counsel in connection with the parties' cross-motions for summary judgment was unwarranted as it had already sent Nelson a check in the amount of $300,194.23.  As is evident from Nelson's counsel's submission, all of work associated with his summary judgment motion had already been performed prior to receipt of the check and the claim determination letter.  Further, as Nelson had rejected the check because it did not fully compensate him for all items he claimed should be paid to him, Nelson had no choice but to proceed with his motion and respond to MetLife's motion for summary judgment.  The Court finds that the fees incurred by Nelson in connection with his summary judgment motion to be reasonable and necessary.

That said, the issue then is whether the additional 40 hours expended by Nelson's lawyer in connection with the preparation of his opposition to MetLife's summary judgment motion and his own reply were reasonable and necessary in light of the outcome of the case.  In this regard, an examination of Nelson's response to MetLife's motion and his reply establishes that they were devoted to the unresolved and

---

[13]     This figure does not include the travel time reflected in the entry dated December 18, 2008 that this Court has already rejected.

hotly contested issues of the case: the proper rate for prejudgment interest; whether MetLife's belated "claim determination" constituted a breach of its fiduciary duties; whether Nelson's employer's matching contributions to his savings and retirement plans and Social Security employer payments amounted to "deferred compensation" under the BTA Policy; and whether his claim for rehabilitative benefits in the amount of $10,000 was premature. <u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary [Docket No. 35]; Plaintiff's Reply Memorandum [Docket No. 39].[14]

MetLife argued that Nelson should not recover fees for claims that have no legal basis, specifically claims for breach of fiduciary duty, bad faith for paying a rate of 1.82% in prejudgment interest, and refusing to pay deferred compensation. Def. Mem., pp. 10-11. Nelson responded that the amount of time claimed for deferred compensation is minimal and would warrant only a slight reduction in the fees award. Reply, p. 22, n. 7. Nelson did not specifically address the issues of prejudgment interest and breach of fiduciary duty in his reply. Instead, Nelson generally asserted that since he was the prevailing party in the case, his claims were meritorious. <u>Id.</u>, p. 22.

As this Court has already observed, because it was not privy to the parties' ultimate settlement of the case, and because the contested issues were never decided by the Court, no one can say which party's position ultimately would have prevailed. However, based on this Court's review of the record, and the arguments of the parties and the law, it concludes that a reduction in the fees incurred by Nelson in connection

---

[14] The Court also observes that the majority of Nelson's opposition to MetLife's motion was devoted to the issues of deferred compensation and prejudgment interest (20 of 28 pages of the opposition brief), and that his reply, for the most part, reiterated the points that he had made in his opposition brief.

with the arguments he advanced in his response (14 of 29 pages) and reply (5 of 11 pages) with respect to his claim prejudgment interest is warranted, as it was contrary to and lacked any support within the governing law of the Eighth Circuit. <u>See</u> n. 6, <u>supra</u>). Accordingly, the Court reduces the time expended by Nelson in connection with his opposition to MetLife's summary judgment motion and his own reply by 20 hours ($4450) or half of the time expended on these efforts.

In summary, the Court rejects Nelson's request for an award of attorney's fees in the amount of $85,065.75, and finds he should be awarded reasonable attorney's fees in the amount of $56,780.75.

### D. Costs

Nelson seeks costs in the amount of $2,493.77. Fourth Ball Aff., Ex. 2. MetLife does not challenge this amount.

Fed.R.Civ.P. 54(d)(1) dictates that "[u]nless a federal statute … provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Here, there is no prevailing party, but in addition to allowing for an award of reasonable attorney's fees, 29 U.S.C. § 1132(g)(1) does permit the Court to award costs of the action to either party. An award of costs is governed by 28 U.S.C. § 1920. <u>See Emmenegger v. Bull Moose Tube Co.</u>, 33 F.Supp.2d 1127, 1132 (E.D.Mo, 1998). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Pursuant to 28 U.S.C. § 1920, only the federal court filing fee ($350) and the fee associated with the service of the Summons and Complaint on MetLife ($133) are compensable. The remainder of the costs sought by Nelson (postage, Federal Express, computer research, travel, meals, lodging) are not compensable under § 1920. See Smith v. Tenet Healthsys. SL, Inc., 436 F.3d 879, 889-90 (8th Cir. 2006) ("Section 1920 does not authorize taxing Smith for the defendants' postage and delivery expenses."); Veliz v. City of Minneapolis, 2009 WL 483854 at *2 (D.Minn. Feb. 25, 2009) (noting that attorney travel and lodging costs are absent from Section 1920 and declining to tax travel and lodging costs); Sun Media Sys., Inc. v. KDSM, LLC, 587 F.Supp.2d 1059, 1065 (S.D.Iowa 2008) (citing cases) (finding that "attorney travel expenses are not authorized by § 1920 and, therefore, disallow[ing] the asserted expense as a taxable cost" and stating that "it is well settled in the Eighth Circuit that 'computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost ....'" (quoting Leftwich v. Harris-Stowe State Coll., 702 F.2d 686, 695 (8th Cir. 1983)); Parke, 2003 WL 131731 at *4 (disallowing computer-aided research, and holding that messenger service, Federal Express, postage, telephone, parking, and travel are all overhead costs normally

associated with the practice of law or are non-taxable "out-of-pocket expenses" that are not "costs" as that term is used in § 1920) (citations omitted).

Nevertheless, because such costs constitute reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, the Court finds that with the exception of the expenses associated with counsel's travel and meals for trips to the Twin Cities to meet with counsel to develop the Rule 26(f) Report ($212.94) and to attend the pretrial conference in person ($219.32), all of the expense submitted by Nelson are properly included as part of the reasonable attorney's fees to be awarded to him. See Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir., 1996) (characterizing charges for long distance telephone calls, facsimile transmissions, messenger services, and express mail as "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, and thus should have been included as part of the reasonable attorney's fees awarded") (citations omitted); see also, Baker v. John Morrell & Co. 263 F.Supp.2d 1161, 1203 (N.D.Iowa, 2003) ("Some "costs" that are not available under 28 U.S.C. § 1920 are recoverable as "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, and thus should [be] included as part of the reasonable attorney's fees awarded …"); Emmenegger, 33 F.Supp.2d 1127, 1133 (after finding "ERISA statute's use of the term "a reasonable attorney's fee" should be interpreted the same as that phrase is interpreted in various other federal fee-shifting statutes, the court found that "a reasonable attorney's fee" under § 1132(g)(1) must mean a reasonable fee for the work product of an attorney, including "the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose

labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit.") (citations omitted).

Accordingly, the Court finds Nelson is entitled to an award of costs in the amount of $2061.51.

## III.   CONCLUSION

In summary, taking into account the reduction in hours and costs billed by counsel as discussed above, the Court concludes that Nelson is entitled to an award of attorneys' fees and costs in the amount of $58,842.26 as follows:

$56,780.75 in attorney's fees

$2,061.51 in costs and expense

**Total**: **$58,842.26**

## IV.   RECOMMENDATION

For the reasons set forth above, the Court recommends that Nelson's Motion for Award of Attorney's Fees and Costs [Docket No. 46] be GRANTED in part and DENIED in part.  The Court recommends that Nelson be awarded attorney's fees and costs in the amount of $58,842.26.


Dated:       December 22, 2009


*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 5, 2010** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.